UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD WEDDLE,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>RENEE BAKER, et. al.,<br><br>　　　　　　　　　　　Defendants. | 3:14-cv-00241-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 35 |

　　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　　　Before the court is Plaintiff's Request for Preliminary Injunction. (ECF No. 35.)[1] Defendants filed a response. (ECF No. 29.) Plaintiff filed a motion to strike the response (ECF No. 45), which the court has since denied (ECF No. 51).

　　　　After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

　　　　At all relevant times, Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., Doc. # 5.) He is a pro se litigant and brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) He asserts claims related to the denial of kosher meals while being transported from Ely State Prison (ESP), and then at Southern Desert Correctional Center (SDCC) and Lovelock Correctional Center (LCC). (*Id*.)

　　　　First, Plaintiff was allowed to proceed with a First Amendment free exercise claim in Count I against defendants Sandoval, Baker and Moore based on his allegation that he was denied a kosher diet on January 11, 2012. (*See* Amended Screening Order, ECF No. 8 at 5-6.)

---

[1] Refers to court's electronic case filing (ECF) number.

1  Plaintiff alleges that he was housed at ESP from 2010 through January 11, 2012, and on
2  August 24, 2011, Sandoval, Baker and Moore approved Plaintiff's change of religion forms to
3  Judaism and inmate religious diet to kosher. (ECF No. 5 at 5.) He began receiving kosher meals
4  in September or October 2011. (*Id*. at 11.) On January 11, 2012, he received approval for transfer
5  to a medium security prison and boarded a transport bus. (*Id*.) The transportation correctional
6  officers gave Plaintiff a non-kosher transport meal. (*Id*.) Plaintiff informed them he required a
7  religious diet, and they told him that was all there was, so he could take it or go hungry. (*Id*.)
8  Plaintiff went hungry.

9  Second, Plaintiff was allowed to proceed with a First Amendment free exercise claim in
10  Count II against defendants Youngblood and Williams based on his allegations that he was
11  denied kosher meals at SDCC. (*See* ECF No. 8 at 6.) Here, Plaintiff alleges that when he arrived
12  at SDCC on January 11, 2012, prison officials did not provide him with a kosher meal for dinner.
13  (ECF No. 5 at 6, 15.) On January 12, 2012, he was not on the call-out list for kosher meals. (*Id*.
14  at 15.) On January 30, 2012, Plaintiff sent an inmate request form to Chaplain Youngblood who
15  responded that Plaintiff was listed as Jewish. (*Id*.) On March 1, 2012, Youngblood responded to
16  Plaintiff's request about kosher meals and stated that Plaintiff's name was not on the kosher
17  master list. (*Id*. at 16.) On April 25, 2012, Plaintiff met with Youngblood. (*Id*.) He told Plaintiff
18  that Williams did not want any new inmates approved for kosher diets and he was not authorized
19  to approve kosher diets after March 20, 2012. (*Id*. at 16-17.) Plaintiff told Youngblood he had
20  been approved on August 24, 2011. (*Id*. at 17.) On May 16, 2012, Youngblood told Plaintiff he
21  had approved Plaintiff's return to his religious diet and forwarded the approval to Williams. (*Id*.)
22  Plaintiff says relief was granted and his issue was resolved from February 1, 2012 through July
23  2012. (*Id*.) There appears to be a discrepancy between these dates, but this is what Plaintiff has
24  alleged.

25  Finally, Plaintiff was allowed to proceed with a First Amendment free exercise claim in
26  Count III against defendants Stogner and Deal based on his allegations that he was denied kosher
27  meals at LCC because he was not on the master list. (*See* ECF No. 8 at 6-7.) Plaintiff alleges that
28  on July 25, 2012, he transferred from SDCC to LCC. (ECF No. 5 at 7.) He did not receive a

1  kosher meal during his transport or at LCC. (*Id.*) On July 29, 2012, Plaintiff sent a request to the
2  LCC chaplain's office stating he had been approved for kosher diet at ESP on August 24, 2011.
3  (*Id.* at 18.) Chaplain Stogner replied that Plaintiff's kosher meal requirement expired on
4  February 10, 2012, and Plaintiff was not listed on the kosher diet master list. (*Id.*) Plaintiff filed
5  grievances. (*Id.*) On August 17, 2012, Deal responded and said Plaintiff had never been on the
6  SDCC kosher meal list and had not been receiving kosher meals from November 1, 2011 through
7  July 26, 2012. (*Id.*)

8  Plaintiff now moves for a preliminary injunction, asking that Defendants be ordered to
9  furnish Plaintiff with his approved kosher diet. (ECF No. 35.)

## II. LEGAL STANDARD

11  The purpose of a preliminary injunction or temporary restraining order is to preserve the
12  status quo if the balance of equities so heavily favors the moving party that justice requires the
13  court to intervene to secure the positions until the merits of the action are ultimately determined.
14  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an
15  "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S.
16  674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the
17  competing claims of injury and must consider the effect on each party of the granting or
18  withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555
19  U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires
20  that the court determine whether Plaintiff has established the following: (1) he is likely to
21  succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary
22  relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.
23  *Id.* at 20 (citations omitted).

24  An even more stringent standard is applied where mandatory, as opposed to prohibitory
25  preliminary relief is sought. The Ninth Circuit has noted that although the same general
26  principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that
27  goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious
28  about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d

670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

Plaintiff must first establish a likelihood of success on the merits in this action. His motion focuses not on the First Amendment free exercise claims he was allowed to proceed on, but on general notions of procedural due process. (ECF No. 35 at 1-6.) He asserts generally that he was denied a kosher diet, but does not include a discussion of any specific facts that would allow the court to conclude he has a likelihood of succeeding on the merits of the claims actually proceeding in this case.

Second, Plaintiff must show a likelihood of irreparable injury in the absence of the issuance of injunctive relief. Here, Plaintiff merely points to a case, *Faith Center Church Evangelistic Ministries v. Glover*, 462 F.3d 1194 (9th Cir. 2006), *as amended*, 480 F.3d 891 (9th Cir. 2007), where the court concluded that enforcement of the county library meeting room policy was likely to violate the Faith Center's right to freedom of expression and demonstrated

irreparable harm. (*See* ECF No. 35 at 6.) Plaintiff provides no discussion of how *he* would suffer irreparable harm in the absence of injunctive relief.

Third, Plaintiff must demonstrate that the balance of hardships tips in his favor. Here, Plaintiff states that he was served kosher meals over Passover during April 2015, and asserts that this demonstrates that the State purchases kosher food, and therefore it cannot claim hardship in having to serve him a kosher diet. (ECF No. 35 at 7.) The court appreciates Plaintiff's argument, but the fact that he was served kosher meals for a week does not address the *balance* of hardships issue.

Finally, Plaintiff must show that a preliminary injunction is in the public interest. Plaintiff asserts that complying with the Constitution is always in the public interest. (ECF No. 35 at 7-8.) That may be the case, but Plaintiff has not successfully demonstrated that Defendants have run afoul of the Constitution. Without such a showing, the court cannot conclude that injunctive relief would be in the public interest.

Having failed to satisfy the prerequisites for injunctive relief, the court recommends that Plaintiff's motion be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Preliminary Injunction (ECF No. 35).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 2, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE