1

2

3

4          UNITED STATES DISTRICT COURT

5          DISTRICT OF NEVADA

6    RICHARD WEDDLE,                        Case No. 3:14-cv-00241-MMD-WGC

7                           Plaintiff,      **REPORT & RECOMMENDATION OF**
                                            **U.S. MAGISTRATE JUDGE**
8         v.

9    RENEE BAKER, et. al.,

10                          Defendants.

11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14   28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15   Defendants' Motion for Summary Judgment. (ECF No. 57, ECF No. 59.)[1] Plaintiff filed a

16   response (ECF NO. 62), and Defendants filed a reply (ECF No. 65).

17          After a thorough review, the court recommends that Defendants' motion be granted.

18                                 **I. BACKGROUND**

19          At all relevant times, Plaintiff was an inmate in the custody of the Nevada Department of

20   Corrections (NDOC). (Pl.'s Compl., Doc. # 5.) He is a pro se litigant and brings this action

21   pursuant to 42 U.S.C. § 1983. (*Id.*) He asserts claims related to the denial of kosher meals while

22   being transported from Ely State Prison (ESP), and then at Southern Desert Correctional Center

23   (SDCC) and Lovelock Correctional Center (LCC). (*Id.*)

24          First, Plaintiff was allowed to proceed with a First Amendment free exercise claim in

25   Count I against defendants Sandoval, Baker and Moore based on his allegation that he was

26   denied a kosher diet on January 11, 2012. (*See* Amended Screening Order, ECF No. 8 at 5-6.)

27   _____

28          [1] Refers to court's electronic case filing (ECF) number.  ECF No. 59 simply contains counsel's signature at
     the end of the document. Since this is the only change, the court will still reference ECF No. 57 when referring to
     Defendants' motion.

1    Plaintiff alleges that he was housed at ESP from 2010 through January 11, 2012, and on
2    August 24, 2011, Sandoval, Baker and Moore approved Plaintiff's change of religion forms to
3    Judaism and inmate religious diet to kosher. (ECF No. 5 at 5.) He began receiving kosher meals
4    in September or October 2011. (*Id*. at 11.) On January 11, 2012, he received approval for transfer
5    to a medium security prison and boarded a transport bus. (*Id*.) The transportation correctional
6    officers gave Plaintiff a non-kosher transport meal. (*Id*.) Plaintiff informed them he required a
7    religious diet, and they told him that was all there was, so he could take it or go hungry. (*Id*.)
8    Plaintiff went hungry.

9          Second, Plaintiff was allowed to proceed with a First Amendment free exercise claim in
10   Count II against defendants Youngblood and Williams based on his allegations that he was
11   denied kosher meals at SDCC. (*See* ECF No. 8 at 6.) Here, Plaintiff alleges that when he arrived
12   at SDCC on January 11, 2012, prison officials did not provide him with a kosher meal for dinner.
13   (ECF No. 5 at 6, 15.) On January 12, 2012, he was not on the call-out list for kosher meals. (*Id*.
14   at 15.) On January 30, 2012, Plaintiff sent an inmate request form to Chaplain Youngblood who
15   responded that Plaintiff was listed as Jewish. (*Id*.) On March 1, 2012, Youngblood responded to
16   Plaintiff's request about kosher meals and stated that Plaintiff's name was not on the kosher
17   master list. (*Id*. at 16.) On April 25, 2012, Plaintiff met with Youngblood. (*Id*.) He told Plaintiff
18   that Williams did not want any new inmates approved for kosher diets and he was not authorized
19   to approve kosher diets after March 20, 2012. (*Id*. at 16-17.) Plaintiff told Youngblood he had
20   been approved on August 24, 2011. (*Id*. at 17.) On May 16, 2012, Youngblood told Plaintiff he
21   had approved Plaintiff's return to his religious diet and forwarded the approval to Williams. (*Id*.)
22   Plaintiff says relief was granted and his issue was resolved from February 1, 2012 through July
23   2012. (*Id*.) There appears to be a discrepancy between these dates, but this is what Plaintiff has
24   alleged.

25         Finally, Plaintiff was allowed to proceed with a First Amendment free exercise claim in
26   Count III against defendants Stogner and Deal based on his allegations that he was denied kosher
27   meals at LCC because he was not on the master list. (*See* ECF No. 8 at 6-7.) Plaintiff alleges that
28   on July 25, 2012, he transferred from SDCC to LCC. (ECF No. 5 at 7.) He did not receive a

kosher meal during his transport or at LCC. (*Id*.) On July 29, 2012, Plaintiff sent a request to the LCC chaplain's office stating he had been approved for kosher diet at ESP on August 24, 2011. (*Id*. at 18.) Chaplain Stogner replied that Plaintiff's kosher meal requirement expired on February 10, 2012, and Plaintiff was not listed on the kosher diet master list. (*Id*.) Plaintiff filed grievances. (*Id*.) On August 17, 2012, Deal responded and said Plaintiff had never been on the SDCC kosher meal list and had not been receiving kosher meals from November 1, 2011 through July 26, 2012. (*Id*.)

Defendants now move for summary judgment. (ECF Nos. 57, 59.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot

avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. PRELIMINARY CONSIDERATIONS**

Plaintiff's response contains several references to the Equal Protection Clause and deliberate indifference, but Plaintiff was not allowed to proceed with claims under those theories. He also references the Amended Complaint and screening order several times in support of his arguments, but a finding that Plaintiff states a colorable claim on screening does not equate to meeting his burden under Rule 56.

Plaintiff also alludes to a failure to provide discovery, without specifying what discovery he is referring to, or why it is necessary to respond to Defendants' motion. Therefore, he has not met his burden under Rule 56(d).

///

///

///

**B. SUMMARY OF FACTS**

Plaintiff filled out a Faith Group Affiliation Declaration form at ESP on August 24, 2011, registering as Jewish and was approved for receipt of kosher meals once the culinary received supply to accommodate him. (ECF No. 57-1 at 2-3.)

On January 11, 2012, Plaintiff was transferred from ESP to SDCC. (ECF No. 57 at 2.) Defendants do not dispute that during his transport, he did not receive a kosher meal. (*Id.*)

According to Defendants, during Plaintiff's stay at SDCC, NDOC was in the process of transitioning from the Prepackaged Kosher Meal (PKM) to the Common Fare Meal (CFM). (Youngblood Decl, ECF No. 57-11 ¶ 4.) CFM was subject to and developed under rabbinical supervision. (ECF No. 57 at 3; Rosenberg Decl., ECF No. 57-2 ¶ 10.)[2]

Defendants assert that pursuant to a federal injunction, on January 12, 2012, NDOC stopped adding or removing any inmate's name to or from the kosher diet master list of those who received the PKM. (ECF No. 57 at 2, citing *Ackerman v. State*, 2:11-cv-00883-GMN-PAL.) According to Youngblood, this meant that he could not place an inmate not then on the kosher master list on the list, but such an inmate could be placed on the CFM list. (Youngblood Decl., ECF No. 57-11 ¶ 6.) According to a declaration filed in the *Ackerman* litigation, the "kosherization" and certification process for implementation of CFM began in July 2011, and in December 2011, the NDOC director added SDCC to the roster of those prisons offering CFM, with a targeted implementation date of February 21, 2012. (Rosenberg Decl. in *Ackerman*, ECF No. 57-3.)

On February 13, 2012, Plaintiff filed a kite to SDCC's chaplain, defendant Youngblood, requesting a kosher diet at SDCC. (ECF No. 57-4 at 6.) He stated: "I am of the faith (Judaism) and require a kosher diet. I had previously been on this diet and would like to know how I may receive this diet in accordance with its biblical rituals." (ECF No. 57-4 at 6.) On March 1, 2012, Youngblood responded: "You[r] name does not appear on the kosher list, therefore you can

---

[2] Dawn Rosenberg is an Administrative Services Officer III at NDOC, who is involved in administrative matters pertaining to NDOC's CFM, including the steps taken by NDOC to prepare for the implementation of CFM at its facilities. (ECF No. 57-2 ¶¶ 1-2.)

request common fare." (*Id.*; Youngblood Decl., ECF No. 57-11 ¶ 5.) According to Youngblood,

he did not compile the kosher master list nor did he remove Plaintiff from the list. (Youngblood

Decl., ECF No. 57-11 ¶ 5.) Plaintiff did not request to be placed on the CFD while at SDCC.

(Youngblood Decl., ECF No. 57-11 ¶ 7; ECF No. 57-4.) Nor did he file a grievance related to

receiving a kosher meal while at SDCC. (Youngblood Decl., ECF No. 57-11 ¶ 8.)

> On March 21, 2012, Plaintiff sent a kite to the kitchen staff at SDCC:
> I have been approved since 8-9-11 for kosher diet for Judaism. I have requested this to the chaplain here (I was at ESP) and the Chaplin told me I was not on a kosher list so I am assuming that I need to request my kosher diet through you. Could you please tell me when this request for my religious diet will be available here. Thank you.

(ECF No. 57-4 at 4.) The following day, he received this response:

> Your name has not showed up from any kosher master list for approval. You may submit a request for our common [fare] meal to Chaplin Youngblood. After he has reviewed and approve[d] your request, then you will be placed on a list for common fare meals.

(ECF No. 57-4 at 4.)

> On May 14, 2012, Plaintiff sent another kite to Chaplin Youngblood:
> As per your request here is a kite for a meeting. I'm having two problems. One: I was not on the callout sheet in the unit to be able to attend Jewish services with the Rabbi on Thursday 5-10-12. Two: I'm not on the callout for kosher meals (although it probably hasn't had time to be yet. I was receiving kosher diet since 8-14-11 in ESP.

(ECF No. 57-4 at 2.) In response, he was advised a meeting was scheduled for May 16, 2012 at

8:30 a.m. (*Id.*)

> On July 26, 2012, Plaintiff was transferred from SDCC to LCC. (ECF No. 57 at 3.)

> On July 31, 2012, Stogner sent a memo to Plaintiff regarding his religious meal request,

recognizing he declared Jewish as his religion, and noting that he qualified for CFM. (Stogner

Decl., ECF No. 57-5 ¶ 4; ECF No. 57-6.) He informed Plaintiff he was not on the kosher meal

list, and that only people on that list could receive the PKM. (Stogner Decl., ECF No. 57-5 ¶ 4.)

He included an application for CFM for him to fill out and return for placement on CFM. (*Id.* ¶

5.) Plaintiff did not complete and return the form. (*Id.*) Stogner maintains he did not create the

master list or remove Plaintiff's name from it. (Stogner Decl., ECF No. 57-5 ¶ 7.) Stogner's

memo noted that a Jewish rabbi specializing in kosher food was present in the institution that

1    day, overseeing the "kosherization" of the food prep area and the entire kosher food preparation

2    procedure. (ECF No. 57-6.)

3        On August 17, 2012, Plaintiff filed his informal level grievance (2006-29-47860) related

4    to the kosher diet. (ECF No. 57-9 at 3-7.) He stated that on July 31, 2012, Stogner denied him a

5    kosher diet for which he had been approved on August 24, 2011. (*Id*.) He had been told that he

6    was not on a master list on February 13, 2012 and July 31, 2012, and that only those inmates on

7    the list on or before February 13, 2012 can receive a kosher diet. (*Id*.) He enclosed the kosher

8    diet approval he had received while at ESP. (*Id*. at 5.) He received an improper grievance

9    memorandum signed August 29, 2012, stating that he failed to submit his grievance with the

10   signature, time and date, and AR 740.03(6)(B) states that an inmate's election not to sign and

11   date the form at any level constitutes abandonment of the claim. (*Id*. at 8.)

12       When Deal became aware of the grievance Plaintiff had filed regarding the kosher meals,

13   Deal investigated why Plaintiff had stopped receiving his kosher meal when he was transferred

14   to SDCC, *i.e.*, why he had been left off or removed from the kosher meal master list and why he

15   was not included in the *Ackerman* lawsuit (both of which occurred before Plaintiff was

16   transferred to LCC). (Deal Decl., ECF No. 57-7 ¶¶ 7-8.) Deal confirmed Plaintiff was not on the

17   master list of persons who were to remain on the kosher menu, and was not a member of the

18   class of persons mandated to continue receiving the kosher menu pursuant to court order in

19   *Ackerman*. (*Id*. ¶ 9.) Deal contacted the Attorney General's Office and was informed Plaintiff

20   was not a part of the *Ackerman* lawsuit. (*Id*. ¶ 10.) Deal could not figure out why Plaintiff was

21   not part of the suit, and is not certain if Plaintiff chose not to participate or was not informed of

22   the suit. (*Id*.) The only information Deal could obtain was that Plaintiff was not part of the

23   lawsuit, and his kosher meal had expired in NDOC's NOTIS system on February 10, 2012. (*Id*. ¶

24   11.)

25       As a result, the only thing Deal could do at LCC was offer Plaintiff CFM temporarily

26   until a request for religious accommodation could be filled out for review. (*Id*. ¶ 13.) This was

27   authorized by the Warden at LCC to allow Plaintiff to receive the kosher CFM until this process

28

- 8 -

1  was completed. (*Id.*) Plaintiff refused to accept form which, if approved, would have gotten him

2  the CFM. (*Id.*)

3  **C. Count I**

4      **1. Statute of Limitations**

5      First, Defendants argue that Count I should be dismissed as barred by the statute of

6  limitations. (ECF No. 57 at 6-7.) Plaintiff did not file a grievance concerning receiving kosher

7  meals until August 17, 2012. They argue that he did not attempt to grieve the allegation that he

8  did not receive a kosher meal on January 11, 2012, until more than seven months later, which

9  runs afoul of NDOC's timing requirements for filing grievances which require a claim

10  concerning religion to be filed within ten days, and a civil rights claim to be filed within six

11  months. As a result, Defendants argue that Plaintiff should have had to bring his claim related to

12  Count I within two years of January 11, 2012.

13      Section 1983 does not contain its own statute of limitations; therefore, federal courts

14  borrow the statute of limitations for section 1983 claims applicable to personal injury claims in

15  the forum state. *See Wilson v. Garcia,* 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton,* 704 F.3d

16  568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and

17  therefore § 1983 actions brought here, is two years. Nev.  Rev.  Stat.  11.190(4)(e); *see also*

18  *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

19      "A statute of limitations begins to run on the date on which the plaintiff's claim

20  'accrues.'" *Pouncil,* 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of

21  action for a Section 1983 claim accrues and, hence, when the statute of limitations beings to

22  run." *Id.* (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has

23  reason to know of the injury that is the basis of the action." *Id.* at 574 (citation omitted).

24      According to Defendants, Plaintiff should have filed his grievance concerning the

25  January 11, 2012 denial of a kosher meal within ten days (pursuant to the provision of AR 740

26  governing grievances involving religious items) or within six months (pursuant to the provision

27  of AR 740 governing civil rights claims). (*See* ECF No. 57-10 at 6.) Plaintiff's complaint here is

28  regarding the denial of his civil rights; therefore he would have had until July 11, 2012 (6 months

1    from the denial of the kosher meal on January 11, 2012), file his grievance on this issue. He filed

2    his grievance on August 17, 2012. Even if Plaintiff had timely filed his grievance on July 11,

3    2012, he filed his complaint on May 7, 2014, within two years of July 11, 2012.

4         In addition, Defendants' argument does not take into account that the statute of

5    limitations is tolled while Plaintiff *completes* the grievance process.[3] While Defendants argue

6    that there is no tolling of the statute of limitations, this ignores the Ninth Circuit's holding that

7    "the applicable statute of limitations must be tolled while a prisoner completes the mandatory

8    exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations omitted).

9         Even if Plaintiff had timely filed the grievance on July 11, 2012, under AR 740, the

10   institution has forty-five days to respond to the informal level grievance. (*See* AR 740.05.12,

11   ECF No. 57-10 at 7.) The inmate then has five days to file a first level grievance. (*See id.*, AR

12   740.05.12.A.) The institution has forty-five days to respond to a first level grievance (s*ee* AR

13   740.06.4, ECF No. 57-10 at 8), and the inmate has five days to file a second level grievance. (*See*

14   *id.*, AR 740.06.4.A.) The institution then has sixty days to respond to a second level grievance.

15   (*See id.,* AR 740.07.3.) Taking into account the tolling requirement, Plaintiff's action is

16   undoubtedly timely.

17        Defendants also argue that any claim concerning a kosher meal that Plaintiff did not

18   receive up until February 17, 2012 (six months prior to filing his grievance) is also barred by the

19   statute of limitations. (ECF No. 57 at 7.) This does not take into account tolling while the

20   grievance process is completed; therefore, the court cannot determine on this basis alone whether

21   any other claims are barred by the statute of limitations.

22        Interestingly, Defendants do not argue that Plaintiff failed to properly exhaust his

23   administrative remedies because he did not comply with NDOC's timing requirements for filing

24   the grievance regarding the denial of the kosher meal on January 11, 2012, or that Plaintiff's

25   August 17, 2012 grievance did not serve to substantively grieve that issue since it focuses on

26   Stogner's denial of the kosher meal at SDCC. Nor do they argue that he failed to exhaust his

27   _____

28        [3] Defendants' failure to argue that Plaintiff failed to properly exhaust his administrative remedies by not timely filing his grievance is addressed, *infra*.

1   administrative remedies because he did not pursue the grievance through all three levels. This

2   becomes immaterial given the courts finding below that there is no evidence to support a claim in

3   Count I against Sandoval, Baker or Moore.

4         **2. Personal Liability of Sandoval, Baker and Moore**

5         Defendants argue that Plaintiff alleges that Sandoval, Baker and Moore approved

6   Plaintiff's religion election form to Judaism and inmate religious diet to kosher. (ECF No. 57 at

7   9.) He received the kosher diet in August of 2011, according to his complaint. (*Id.*) He alleges

8   denied his kosher meal during transport from ESP to SDCC on January 11, 2012. (*Id.*)

9   Specifically, he alleges that he informed the transport officers he required a religious diet, and

10  one of the officers responded that he could take what was offered or go hungry; he went hungry.

11  (*Id.*) Defendants contend there is no evidence that Sandoval, Baker, or Moore denied Plaintiff's

12  kosher meal on January 11, 2012, but instead, they had approved Plaintiff for kosher meals. (*Id.*)

13  They point out that none of the transportation officers are named as defendants.

14        The court agrees that there is no evidence that Sandoval, Baker or Moore denied Plaintiff

15  a meal during his transport from ESP to SDCC on January 11, 2012. These individuals approved

16  Plaintiff for kosher meals at ESP, and there is no evidence they were involved in the failure to

17  provide him with a kosher meal during his transport from ESP to SDCC on January 11, 2012. As

18  a result, summary judgment should be granted as to Count I.

19        The court declines, however, to deem Count I frivolous, as Defendants request. (*See* ECF

20  No. 57 at 9-10.) Plaintiff is a pro se litigant, entitled to a liberal construction of his pleadings.

21  The court found that Plaintiff stated a colorable claim here, but it turns out he did not include the

22  correct defendants.

23  **D. COUNT II**

24        **1. Summary of Argument**

25        First, Defendants argue that Plaintiff's refusal to request the kosher CFM calls into

26  question the sincerity of his religious belief. (ECF No. 57 at 12.) Defendants do not dispute that

27  when Plaintiff arrived at SDCC, he stopped receiving the kosher meals he had been receiving at

28  ESP. (ECF No. 57 at 12.) They argue, however, that he did not take any action regarding this

issue until over a month after he arrived at SDCC, when he sent the kite to Chaplin Youngblood on February 13, 2012, who advised Plaintiff on March 1, 2012, he was not on the kosher master list and instructed Plaintiff he could receive CFM. (*Id*.) He kited the kitchen and got the same response. (*Id*.) Plaintiff did not request the CFM while at SDCC, and did not file a grievance about not having kosher meals at SDCC for over six months, until he was at LCC. (*Id*.) In fact, Plaintiff still has not requested CFM. (*Id*.)

Second, Defendants argue that they have not burdened Plaintiff's religious practice. (*Id*. at 13.) They argue that when Plaintiff arrived at SDCC, it was discovered (due to unknown reasons) that he was not on the kosher master list for PKM, but he was informed he could get on the new CFM. (*Id*.)

They further argue that Youngblood and Williams did not burden Plaintiff's religious practice. (*Id*. at 14.) When it was brought to Youngblood's attention that Plaintiff was not receiving his kosher meal, he was offered a CFM religious diet. Youngblood and Williams argue they are not responsible for Plaintiff's decision not to consume the CFM diet made available to him. (*Id*.) They also argue there is no evidence that they took Plaintiff off the kosher master list, and point out that Plaintiff was not a member of the class in *Ackerman*. (*Id*.)

Plaintiff asserts that as far as he knows, there was no CFM provided when he arrived at SDCC. (ECF No. 62 at 2, referencing Youngblood's Interrogatory Responses Nos. 1, 6.) In addition, Plaintiff appears to assert that Defendants cannot prove that they complied with the federal court order in *Ackerman*. (*Id*. at 3.)

With respect to Ms. Rosenberg's declaration, Plaintiff contends it only concerns the food preparation, and not the religious diet. (*Id*. at 4.) He argues that the CFM is vastly different than the PKM diet, because a CFM diet contains little meat and no dessert. (*Id*. at 7.)

**2. Analysis**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment ... prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious

1   practices and beliefs does not terminate at the prison door. The free exercise right, however, is

2   necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

3   legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196,

4   197 (9th Cir. 1987) (per curiam); *see also  O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

5   (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*,

6   514 F.3d 878, 883-84 (9th Cir. 2008). To implicate the free exercise clause, a prisoner must

7   establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at

8   884-85.

9         In analyzing the legitimacy of regulation of a prisoners' religious expression, the court is

10   instructed to afford appropriate deference to prison officials, "'who are actually charged with and

11   trained in the running of the particular institution under examination.'" *O'Lone*, 482 U.S. at 349

12   (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). To afford appropriate deference, the

13   applicable legal standard looks at whether the prison regulation at issue "'is reasonably related to

14   legitimate penological interests.'" *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

15         An analysis under *Turner* employs the following factors: (1) "there must be a 'valid,

16   rational connection' between the prison regulation and the legitimate governmental interest put

17   forward to justify it"; (2) "whether there are alternative means of exercising the right that remain

18   open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will

19   have on guards and other inmates, and on the allocation of prison resources generally"; (4) the

20   "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482

21   U.S. at 89-91.

22         The court finds there is no evidence to support that Youngblood or Williams violated

23   Plaintiff's rights under the First Amendment's Free Exercise Clause, *i.e.*, that they engaged in

24   conduct which prohibited him from practicing his religion. Plaintiff arrived at SDCC on January

25   11, 2012. He did not send a kite requesting a kosher meal until February 13, 2012. Youngblood

26   responded to the kite on March 1, 2012, stating that Plaintiff's name did not appear on the kosher

27   meal master list, but that he could request CFM, which had been scheduled to be implemented at

28   SDCC on February 21, 2012. Plaintiff never requested CFM. Instead, he sent another kite to the

1   kitchen staff at SDCC on March 21, 2012, again requesting a kosher diet. He was told again that

2   he was not on the master list, but could request CFM. Plaintiff sent another kite to Youngblood

3   that he was not on the kosher meal callout, and Youngblood set up a meeting. Plaintiff was then

4   transferred to LCC.

5           The court cannot conclude that Youngblood's conduct prohibited Plaintiff from

6   practicing his religion. Instead, when Youngblood was alerted to the situation, he advised

7   Plaintiff he could not receive the PKM meal he had been receiving at ESP because his name was

8   not on the master list (for unknown reasons), but that he could sign up to receive a kosher meal

9   through CFM. While Plaintiff argues that the CFM meal is different from PKM because it has

10  less meat and no dessert, he provides no evidence to dispute that "kosherization" and kosher

11  certification process Defendants describe in their motion. Under these facts, there was no

12  violation of the Free Exercise Clause by Youngblood. Moreover, there is no evidence in the

13  record concerning Williams' involvement in Plaintiff's failure to receive kosher meals at SDCC.

14  Finally, there is no evidence that these defendants had any involvement in the creation of the

15  master list, that they took Plaintiff's name off of it, or failed to add it to the list.

16          As a result of the court's conclusion that Youngblood and Williams did not engage in

17  conduct that prohibited Plaintiff from practicing his religion in the first place, the court need not

18  discuss the *Turner* factors.

19          Summary judgment should be granted as to Count II.

20  **E. COUNT III**

21          **1. Summary of Argument**

22          Defendants Stogner and Deal argue, as Youngblood and Williams did with respect to

23  Count II, that the sincerity of Plaintiff's religious belief should be called into question because he

24  did not request CFM while at LCC.

25          Defendants Stogner and Deal also argue that they did not burden Plaintiff's religious

26  practice. (*Id*. at 14-15.) Four days after Plaintiff arrived at LCC, Stogner replied to Plaintiff's kite

27  for a kosher meal, informing him he was not on the master list to continue receiving PKM, but he

28  could request CFM. (*Id*.) Plaintiff did not respond. Stogner did not exclude or remove Plaintiff

from the list. (*Id.*) Deal tried to figure out why Plaintiff had been left off or removed from the master list, and why he had not been included in the *Ackerman* lawsuit (either because he chose not to participate or was not informed of it), and discovered there must have been an oversight. (*Id.* at 15.)

### 2. Analysis

The court concludes, as it did with respect to Count II, that there is no evidence that Stogner or Deal prohibited Plaintiff from practicing his religion in violation of the First Amendment's Free Exercise Clause. Instead, the evidence reveals that as soon as Plaintiff arrived to LCC, Stogner recognized Plaintiff's declaration as Jewish, and gave him an application to receive a kosher meal through CFM. He specifically advised Plaintiff that there was a rabbi at LCC supervising the "kosherization" process. Plaintiff never acted on the application.

Plaintiff filed a grievance on August 17, 2012, and when Deal became aware of the grievance, he initiated an investigation as to why Plaintiff had stopped receiving kosher meals, and why he was not part of the *Ackerman* litigation. Despite his diligent efforts, his search turned up no meaningful results. Nonetheless, Deal advised Plaintiff that he could receive a kosher meal through CFM. Plaintiff refused to accept the form to apply for CFM.

Stogner and Deal did not prohibit Plaintiff from practicing his religion. Instead, they provided him an alternative mechanism for receiving his kosher meal while at LCC, but Plaintiff declined to apply for the CFM meal. As a result, summary judgment should be granted as to Count III.

Given the court's conclusions with respect to all three counts, it need not reach Defendants' qualified immunity argument.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **<u>GRANTING</u>** Defendants' Motion for Summary Judgment (ECF No. 57).

///

///

- 15 -

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: January 11, 2016.

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE